### HOOKLESS FASTENER CO. v. H. L. ROGERS CO., Inc.

Circuit Court of Appeals, Second Circuit. October 29, 1928.

No. 121.

Robert Cushman, of Boston, Mass., and Drury W. Cooper, of New York City, for appellant.

Charles Neave and Julian S. Wooster, both of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. The appellee, owner of the Sundback patent, No. 1,322,650, granted November 25, 1919, for a "fastener for slit and other closures," successfully charged the appellant with infringement of claims 4, 5, 13, and 20 in the court below. Appellant challenges the decree entered, claiming that there was no infringement, or, indeed, invention or patentable novelty in what Sundback is said to have invented.

The patent shows the slide-operated separable fastener, old and well known in the art. There are two rows of interlocking or interengaging fastener members on the opposed edges of two pieces of stringers. The slider embraces and runs along these two rows of fastener members, and is formed with two diverging or angularly disposed cam channels, through which the rows of fastener members pass. The movement of the slider along the stringers in one direction will close or lock the fastener members together, and movement of the slider in the other direction will unlock or open the fastener members. These fasteners are made up and sold for attachment to articles such as bags, gloves, shoes, curtains, etc. The stringers are sewed to the edges of the gap or opening which is to be closed and incloses the fasteners. Slide fasteners were old, as illustrated by the patents of the prior art to which we shall refer. But, for the patent in suit, it is claimed that it has a distinct feature of using a woven strip in which the threads run bias or diagonally of the stringer, to enable the tape to stretch or contact more readily than a straight weave, when the fastener is applied to a curved opening, and also the application of a slide-operated fastener to an interior slit or opening closed at both ends.

The infringement charged is the operation of the slide-operated fastener to the interior slit, as distinguished from a slit closed at one end and open at the other end. The infringing article is a tobacco pouch having a slide-operated fastener thereon. The claim is that to use the slide fastener, where the meeting edges are fastened together at one end and left free or open at the other end, is not infringement, but using the same fastener to operate in the same way for the same purpose on the meeting edges, where the meeting edges are sewed together at both ends of the opening, is infringement.

The claims in suit purport to cover the application of a slide operated to an interior slit. Claim 4, which is typical, reads:.

"In a fastener, a body having an interior slit, connecting members on the edges of said slit, and means movable on said edges between the ends of said slit and controlling said members to open and close said slit."

The appellee uses its own form of patented fastener and the appellant uses a fastener of another manufacturer having fastener elements—a pair of deformed, coiled wire springs, forming interlocking members, in place of the separate individual interlocking members used in appellee's fastener. The patent in suit acknowledges that other forms of fasteners, operated by the sliding device, may be used instead of the one referred to in the specifications.

The interior slit refers to any opening closed at both ends, and includes an opening formed between the meeting edge of the seam and closed at both ends, as well as a slit formed in the interior area of a piece of fabric. It is clear that invention is claimed for the application of an old and well-known slide-operated fastener without any change in structure whatever, either in the fastener or the operating parts, to a slit opening which is closed at both ends, as distinguished from a slit closed at one end. The appellee says the interior slit is a gap which is closed at both ends, as distinguished from one closed at one end and open at the other end. The court below found that, when a slit-operated fastener is applied to an interior slit—that is, an opening closed at both ends—the closing movement of the slider as well as its opening movement is necessarily toward and against one of the closed ends. The closed end acts as a stop for the closing movement of the slide, and prevents the stringers from being pulled apart either purposely or accidentally, while the slider is in closed position, and so locks the slit against opening, except by moving the slider back on the stringers away from the closed end.

But the application of a slide fastener to an opening, which in its nature prevents that fastener from being opened by pulling the stringer apart was obvious and an accepted use of the slide. This inventor was not the first to apply a slide fastener to the slit or opening in such way that the slide is moved toward and against the closed end of the slit

in the closing. The Judson patent, No. 504,-038, granted August 29, 1893, applied to a slide-operated fastener which consisted of two flaps, corresponding to the stringers in the patent in suit, on the edges of which were attached two rows of clasping or interlocking members. These stringers or flaps were attached to the meeting ends of the shoe upper. The fastener members were engaged or became disengaged by sliding the guide in one direction or the other on the stringer. It showed each essential of the slide operated fastener claimed for the patent in suit consisting of two stringers, two rows of attached interlocking members on the edge of the stringers and the hand-operated slider, whose movement in one direction closed the slit and locked the fasteners and whose movement in the other direction unlocked the fasteners and opened the slit. Judson, in opening the stringers by pulling the slider against them, reversed the slider and then pulled it in the same direction. But it is plain that it did not require inventive thought to learn that the slider might be pulled in the opposite direction by positive movement and accomplish the opening of the slit. It is also clear that, if the slider is not taken off when the stringers are closed, it might be pulled back in the reverse direction and opened.

Thus this mechanical device here claimed was known to the art when Sundback made his invention. The Calhoun patent, No. 887,-586, granted May 12, 1908, contains the same essential elements. It is closed by pulling the slider downward from the neck to the waist toward and against the closed end of the opening in the waist. It is pulled toward the closed end of the slit to close the opening, just as in the patent in suit. The Calhoun invention consisted in making the slider in two parts, so that, after the slider had been moved down to the closed end of the slit, it was not necessary to slide it all the way back to the neck in order to unlock the fastener, but the two sections of the slider could be disconnected, whereupon the two stringers of the fastened members could be detached by pulling apart the edges from one to the other end of the slit by a tearing motion. While Calhoun does not show a closed end slit, to open the slit the slider could either be moved back again on the stringers to the neck band, or the separable slider could be disconnected, leaving the stringers free of tearing the fasteners apart. This was Calhoun's contribution to the art. But it was not a patentable invention to merely point out how to pull the slider in the opposite direction, as done in the patent in suit.

As long as the slider remains in the position of abutting against the closed end of the slit, it is impossible to open the fastener by pulling apart the ends of the stringers, because the closed end of the slit necessarily ties the ends together until the slider moves away from the closed end, and there is no room to insert the finger for tearing apart the stringers at a point beyond the slider. In the Calhoun patent, the closed end of the slit, like in the patent in suit, stopped the slider and prevented the stringers at that end from being pulled apart to open the fastener by camming the slide upward. The Calhoun fastener could be opened by being pushed up by hand the whole length of the stringers, to effect the opening movement, as shown by Fesler, No. 1,190,882, or Judson, No. 504,038, or the slide could be made separable and taken bodily apart, as suggested by Calhoun. Sundback adopted the obvious expedient of merely sliding the slider back by hand to its new position. Nor was the initiating and effecting the closing and opening of the fastener by moving the slider on the stringers, as distinguished from pulling the sliders apart, new, for the closing of the separable fasteners was always performed by moving the slider on the stringers. The opening of the fastener was initiated and effected by moving the sliders on the stringers as referred to in the prior art.

■■ The application of an old and known slider fastener, without change in the structure of the fastener or the operating parts, to a slit which is closed at both ends, as distinguished from a slit closed at one end and open at the other end, was but an expected and intended use of the prior art slide fasteners. It was no invention to thus use these slide fasteners. The public cannot be deprived of this use of the closed end of the slit to stop the slider and lock it in a closed position, by preventing the sliders from being pulled apart because some one has discovered that it is capable of producing a better result or has a wider range of use than was known before. Lovell Mfg. Co. v. Cary, 147 U. S. 623, 13 S. Ct. 472, 37 L. Ed. 307; Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267.

Whatever may have been the commercial success of this device becomes unimportant, where, as here, the patent is invalid, presenting no inventive thought over what the art already knew. Harvey Hubbell, Inc., v. General Electric Co. (C. C. A.) 267 F. 564; Johnson v. Lambert (C. C. A.) 234 F. 886; National Sweeper Co. v. Bissell Co. (C. C. A.) 249 F. 196. The claims relied upon are held to be invalid because of the teachings of the prior art.

Decree reversed.